# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SMD INVESTMENTS LIMITED; GE EUROPEAN ) | |
| EQUIPMENT FINANCE LIMITED; WELLS FARGO ) | |
| BANK NORTHWEST, NATIONAL ASSOCIATION; ) | |
| and CERTAIN UNDERWRITERS AT LLOYD'S AND ) | |
| LONDON MARKET COMPANIES SUBSCRIBING ) | |
| TO POLICY NUMBER A4/23957, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 05-2134-KHV |
| RAYTHEON AIRCRAFT COMPANY, ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiffs filed suit against Raytheon Aircraft Company to recover damages related to an airplane accident during a landing at Blackbushe Airfield in the United Kingdom. Plaintiffs assert claims for breach of express and implied warranties, breach of contract, negligence and strict liability. This matter is before the Court on Raytheon's Motion For Partial Summary Judgment (Doc. #5) filed June 15, 2005.

### Factual Background

The following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

Raytheon Aircraft Company ("Raytheon") is a Kansas corporation with its principal place of business in Wichita, Kansas. In 2003, Raytheon manufactured a Raytheon Model 390 Premier I airplane, serial number RB-79. Plaintiff SMD Investments Limited ("SMD") is organized under the laws of the States of Guernsey, United Kingdom, and has its principal place of business in the United Kingdom.

In January of 2003, SMD signed an Aircraft Purchase Agreement to purchase RB-79 from Raytheon. Raytheon signed the agreement later that month. Paragraph 14 of the agreement provides that the agreement "shall be governed by the laws of the State of Kansas."

In February and March of 2003, the parties signed two amendments to the Aircraft Purchase Agreement which incorporated the Aircraft Specification & Description ("Aircraft Specification"). The Aircraft Specification described the aircraft and applicable warranties. Paragraph 19 of the Aircraft Specification was titled "Premier I New Aircraft Limited Warranty." Paragraph A provides:

> 1. Subject to the limitations and conditions hereinafter set forth, Raytheon warrants, at the time of delivery by Raytheon, each part of the Aircraft manufactured by Raytheon to be free from (i) defects in materials or workmanship, and (ii) defects in design that in view of the state-of-the-art as of the date of manufacture should have been foreseen; provided, however, that the defect must be discovered and reported to Raytheon within sixty (60) months from the date of delivery of the Aircraft to Buyer (twenty-four (24) months in the case of exterior paint and interior finish items designed, manufactured or installed by Raytheon).
>
> 2. Subject to the limitations and conditions hereinafter set forth, Raytheon warrants, at the time of delivery by Raytheon, each part of the Aircraft not manufactured by Raytheon, except avionics equipment and engines (reference paragraphs C and D below), to be free from (i) defects in material or workmanship, and (ii) defects in design that in view of the state-of-the-art as of the date of manufacture should have been foreseen; provided, however, that the defect must be discovered and reported to Raytheon within twenty-four (24) months from the date of delivery of the Aircraft to Buyer.
>
> 3. The entire extent of Raytheon's liability shall be limited to that of either reimbursing Buyer for its costs of purchasing a rebuilt, overhauled or repaired part from either Raytheon or a properly rated Raytheon Aircraft Authorized Service Center or, at Raytheon's election, reimbursing Buyer for its costs of having the part repaired at a properly Rated Raytheon Authorized Service Center. If Raytheon elects not to repair the part and if neither a rebuilt, overhauled or repaired part is, in Raytheon's opinion, timely available then Raytheon will reimburse Buyer for its costs of purchasing a new part from either Raytheon or a properly Rated Raytheon Authorized Service Center. The labor necessary to remove from the Aircraft any part or parts and to reinstall in the Aircraft such part or parts, as well as any repair made as the result of improper installations by

> Raytheon, shall be covered by this Warranty, provided the work is performed at a properly Rated Raytheon Aircraft Authorized Service Center. The part to be replaced must in all instances be returned shipping prepaid to Raytheon. RAYTHEON'S LIMITED WARRANTY will apply to any part repaired or replaced by a properly Rated Raytheon Authorized Service Center pursuant to RAYTHEON'S LIMITED WARRANTY: however, the applicable warranty for such part repaired or replaced shall be limited to the unexpired portion of RAYTHEON'S LIMITED WARRANTY described in paragraph (1) or (2) above, as applicable. In other words, the warranty period of the part repaired or replaced does not start over from the date of reinstallation.
>
> 4. Routine services (such as inspections, cleaning, adjustments etc.) and replacement of items which deteriorate from wear or exposure (such as bulbs, tires, brakes, hoses, belts, etc.) are not covered by this LIMITED WARRANTY. Such routine services and replacements required during the course of operation are not considered to be the result of any defect in the Aircraft.

Paragraph B contains limitations to the warranty, and subparagraphs 3, 4 and 5 provide:

> 3.   TO THE EXTENT ALLOWED BY APPLICABLE LAW, BUYER WAIVES AS TO RAYTHEON AND SELLER ALL OTHER WARRANTIES, WHETHER OF MERCHANTIBILITY, FITNESS OR OTHERWISE. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF.
>
> 4.   TO THE EXTENT ALLOWED BY APPLICABLE LAW, THE OBLIGATIONS OF RAYTHEON SET FORTH HEREIN SHALL BE THE EXCLUSIVE REMEDIES FOR ANY BREACH OF WARRANTY HEREUNDER, AND, TO THE SAME EXTENT, NEITHER RAYTHEON NOR SELLER SHALL BE LIABLE FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, MULTIPLE OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, ANY DAMAGES FOR DIMINUTION OF MARKET VALUE, LOSS OF USE OR LOSS OF PROFITS, OR ANY DAMAGES TO THE AIRCRAFT CLAIMED BY BUYER OR ANY OTHER PERSON OR ENTITY UPON THE THEORIES OF NEGLIGENCE OR STRICT LIABILITY IN TORT.
>
> 5.   ANY ACTION BY BUYER FOR BREACH OF THIS WARRANTY BY EITHER RAYTHEON OR SELLER MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES.
>
> On or about November 7, 2003, SMD and GE European Equipment Finance Limited ("GE")

signed a Purchase Agreement Assignment and Consent. Pursuant to the assignment, GE acquired SMD's rights to the Aircraft Purchase Agreement pertaining to RB-79. The Bill of Sale conveying RB-79 is dated November 7, 2003, and the airplane was delivered that same day for a purchase price of approximately $5.7 million.

On April 7, 2004, during a landing at Blackbushe Airfield in the United Kingdom, RB-79 hit an embankment constructed to protect the fuel storage area. As a result, the wings detached from the fuselage. No one was injured in the accident, but the aircraft was a total loss. Plaintiffs claim that certain defects in RB-79 caused the accident by compromising the landing and braking systems of the aircraft.

On April 6, 2005, plaintiffs filed suit to recover damages from the accident. Plaintiffs assert claims for breach of express warranty (Count I), breach of the implied warranty of fitness for a particular purpose (Count II), breach of the implied warranty of merchantability (Count III), breach of contract (Count IV), negligence (Count V) and strict liability (Count VI). On November 2, 2005, the Court dismissed plaintiff's damage claims for negligence and strict liability (Counts V and VI) to the extent that they relate to the airplane itself.

## **Analysis**

Defendant argues that the statute of limitations bars Counts I through IV of plaintiffs' complaint. Kansas law provides that an action for breach of any contract of sale must commence within four years after the cause of action accrues. K.S.A. § 84-2-725(1). By the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it. Id.

Here, Paragraph 19(b)(5) of the Aircraft Specification reduced the period of limitation to one year by providing as follows:

> 5.    ANY ACTION BY BUYER FOR BREACH OF THIS WARRANTY BY EITHER RAYTHEON OR SELLER MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES.

The parties dispute when a cause of action accrues under Paragraph 19(b)(5).

The parties implicitly assume that the reduced statute of limitations in Paragraph 19(b)(5), rather than the two-year statute of limitations for tort claims under K.S.A. § 60-513(c), applies in this case. In light of Seguros Popular C.xA. v. Raytheon Aircraft Co., No. 05-1002-JTM, 2005 WL 2099705 (D. Kan. Aug. 30, 2005), which relied on Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569 (10th Cir. 1984), and Fordyce Concrete, Inc. v. Mack Trucks, Inc., 535 F. Supp. 118 (D. Kan. 1982), the Court questions whether the parties' assumption is correct. In Seguros Popular, the Honorable J. Thomas Marten held that actions which do not assert personal injuries and are denominated as breach of warranty actually sound in tort where the alleged defect renders the product unreasonably dangerous. See Seguros Popular, 2005 WL 2099705 at *3. The product in Seguros Popular was also an airplane. Judge Marten reasoned that because the defect allegedly created a danger of sudden and imminent hazard to human life and was alleged to have actually caused the crash of the aircraft, plaintiff's cause of action sounded in tort and was governed by the statute of limitations for tort actions. See id.

Here, plaintiffs allege that certain defects caused the crash by compromising the landing and braking systems of the aircraft. See First Amended Complaint (Doc. #23) ¶¶ 17-24. Under Seguros Popular, plaintiffs' claims for breach of warranty would sound in tort and be governed by the two-year statute of limitations in K.S.A. § 60-513. Under that provision, Counts I through IV would be timely because plaintiffs filed suit within two years of the date of the accident. Because plaintiffs did not argue that K.S.A. § 60-513 applied and defendant has not had an opportunity to brief the issue in this case, the Court will

permit defendant to file a memorandum on the issue on or before **January 17, 2006**. Plaintiffs may file a response on or before **January 24, 2006**.

**IT IS SO ORDERED**.

Dated this 9th day of January, 2006, at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge