IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SMD INVESTMENTS LIMITED; GE EUROPEAN )
EQUIPMENT FINANCE LIMITED; WELLS FARGO )
BANK NORTHWEST, NATIONAL ASSOCIATION; )
and CERTAIN UNDERWRITERS AT LLOYD'S AND )
LONDON MARKET COMPANIES SUBSCRIBING )
TO POLICY NUMBER A4/23957, )
　　　　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　　　　　 )　　CIVIL ACTION
v. )
　　　　　　　　　　　　　　　　　　　　　　　　 )　　No. 05-2134-KHV
RAYTHEON AIRCRAFT COMPANY, )
　　　　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　Defendant. )
_____)

## MEMORANDUM AND ORDER

Plaintiffs filed suit against Raytheon Aircraft Company to recover damages related to an airplane accident during a landing at Blackbushe Airfield in the United Kingdom. Plaintiffs assert claims for breach of express and implied warranties, breach of contract, negligence and strict liability. This matter is before the Court on Raytheon's Motion For Partial Summary Judgment (Doc. #5) filed June 15, 2005. For reasons stated below, the Court sustains defendant's motion in part.[1]

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that

---

[1] Plaintiffs ask for oral argument on defendant's motion for summary judgment. See Plaintiffs' Memorandum In Opposition To Raytheon's Motion For Partial Summary Judgment (Doc. #19) filed August 15, 2005 at 17. The Court finds that oral argument will not materially assist in the disposition of the motion. Accordingly, plaintiffs' request is overruled.

the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."

Anderson, 477 U.S. at 251-52.

## **Factual Background**

The following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiffs, the non-movants.

Raytheon Aircraft Company ("Raytheon") is a Kansas corporation with its principal place of business in Wichita, Kansas. In 2003, Raytheon manufactured a Raytheon Model 390 Premier I airplane, serial number RB-79. SMD Investments Limited ("SMD") is organized under the laws of the States of Guernsey, United Kingdom, and has its principal place of business in the United Kingdom.

In January of 2003, SMD signed an Aircraft Purchase Agreement to purchase RB-79 from Raytheon. Raytheon signed the agreement later that month. Paragraph 14 of the agreement provides that the agreement shall be governed by the laws of the State of Kansas.

In February and March of 2003, the parties signed two amendments to the Aircraft Purchase Agreement which incorporated the Aircraft Specification & Description ("Aircraft Specification"). The Aircraft Specification described the aircraft and applicable warranties. Paragraph 19 of the Aircraft Specification was titled "Premier I New Aircraft Limited Warranty." Sub-paragraph A of Paragraph 19 provides in part as follows:

> 1. Subject to the limitations and conditions hereinafter set forth, Raytheon warrants, at the time of delivery by Raytheon, each part of the Aircraft manufactured by Raytheon to be free from (i) defects in materials or workmanship, and (ii) defects in design that in view of the state-of-the-art as of the date of manufacture should have been foreseen; provided, however, that the defect must be discovered and reported to Raytheon within sixty (60) months from the date of delivery of the Aircraft to Buyer (twenty-four (24) months in the case of exterior paint and interior finish items designed, manufactured or installed by Raytheon).

> 2. Subject to the limitations and conditions hereinafter set forth, Raytheon warrants, at the time of delivery by Raytheon, each part of the Aircraft not manufactured by Raytheon, except avionics equipment and engines (reference paragraphs C and D below), to be free from (i) defects in material or workmanship, and (ii) defects in design that in view of the state-of-the-art as of the date of manufacture should have been foreseen; provided, however, that the defect must be discovered and reported to Raytheon within twenty-four (24) months from the date of delivery of the Aircraft to Buyer.
>
> 3. The entire extent of Raytheon's liability shall be limited to that of either reimbursing Buyer for its costs of purchasing a rebuilt, overhauled or repaired part from either Raytheon or a properly rated Raytheon Aircraft Authorized Service Center or, at Raytheon's election, reimbursing Buyer for its costs of having the part repaired at a properly Rated Raytheon Authorized Service Center. * * *

Sub-paragraph B of Paragraph 19 provides that any action for breach of the "Premier I New Aircraft Limited Warranty" must be commenced within one year "after the cause of action accrues."

On or about November 7, 2003, SMD and GE European Equipment Finance Limited ("GE") signed a Purchase Agreement Assignment and Consent. Pursuant to the assignment, GE acquired SMD's rights to the Aircraft Purchase Agreement pertaining to RB-79. The Bill of Sale conveying RB-79 is dated November 7, 2003, and the airplane was delivered that same day for a purchase price of approximately $5.7 million.

On April 7, 2004, during a landing at Blackbushe Airfield in the United Kingdom, RB-79 hit an embankment constructed to protect the fuel storage area. As a result, the wings detached from the fuselage. Nobody was injured in the accident, but the aircraft was a total loss. Plaintiffs claim that certain defects in RB-79 caused the accident by compromising the landing and braking systems of the aircraft.

On April 6, 2005, plaintiffs filed suit to recover damages from the accident. Plaintiffs assert that defendant breached express warranties that the aircraft and its components would be free from defects in materials, workmanship and design (Count I), that defendant breached the implied warranty that the aircraft

was fit for its particular purpose for air transportation and that it was airworthy (Count II), that defendant breached the implied warranty that the aircraft was merchantable and fit for its ordinary purpose of air transportation (Count III), and that defendant breached the contract because the aircraft was a safety hazard, it was not free from defects in materials, workmanship and design, and it was not fit for its particular purpose for air transportation (Count IV). Plaintiffs also assert claims for negligence (Count V) and strict liability (Count VI) to recover for damages to property other than the airplane itself.[2]

## Analysis

Defendant argues that the statute of limitations bars Counts I through IV of plaintiffs' complaint, which assert claims for breach of express and implied warranties, and breach of contract. Kansas law provides that an action for breach of any contract of sale must commence within four years after the cause of action accrues.[3] K.S.A. § 84-2-725(1). By the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it. Id.

Here, Paragraph 19(b)(5) of the Aircraft Specification reduced the period of limitation to one year "after the cause of action accrues." Paragraph 5 specifically provides that "ANY ACTION BY BUYER

---

[2] On November 2, 2005, the Court dismissed plaintiff's damage claims for negligence and strict liability (Counts V and VI) to the extent that they relate to the airplane itself.

[3] In Seguros Popular C. x A. v. Raytheon Aircraft Co., No. 05-1002-JTM, (D. Kan.), defendant argued that actions which do not assert personal injuries and are denominated as breach of warranty actually sound in tort where the alleged defect renders the product unreasonably dangerous. Under such an interpretation, the two-year statute of limitations for tort claims under K.S.A. § 60-513(c), would apply in this case rather than the reduced statute of limitations in Paragraph 19(b)(5). In Seguros Popular, the Honorable J. Thomas Marten ultimately rejected defendant's position. See Memorandum And Order (Doc. #32) filed January 18, 2006 in Case No. 05-1002-JTM. The parties agree that under Kansas law, a breach of warranty claim is to be treated as a contract rather than a tort claim. See Raytheon's Memorandum (Doc. #56) filed January 10, 2006 at 1-2; Plaintiffs' Response To Raytheon's Memorandum (Doc. #59) filed January 18, 2006 at 1-2.

FOR BREACH OF THIS WARRANTY BY EITHER RAYTHEON OR SELLER MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES." The parties dispute when a cause of action accrues under Paragraph 19(b)(5). By statute, Kansas law provides as follows:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

K.S.A. § 84-2-725(2). Relying on this statutory language, defendant maintains that plaintiffs' cause of action for breach of warranty and breach of contract accrued upon delivery of the aircraft. Plaintiffs argue that (1) after applying rules of contract interpretation, Paragraph 19(a) permits plaintiffs to file suit one year after they discover and report a defect, so long as the defect is discovered and reported within five years after delivery of the aircraft (two years for non-Raytheon parts); and (2) defendant's interpretation of the contract is unconscionable.

For purposes of the statute of limitations discussion, the parties do not distinguish between Counts I through IV. As explained above, Count I is based on express warranties, and Counts II and III are based on implied warranties. Plaintiffs' claim for breach of contract (Count IV) is based on defendant's alleged breach of express and implied warranties. Plaintiffs have not raised the issue, but Paragraph 19(b)(5), which reduces the statute of limitations to one year, applies only to an "action by buyer for breach of this warranty," i.e. the express warranty. Paragraph 19(b)(5) does not limit the statute of limitations for claims based on implied warranties (Counts II and III) or, to the extent the alleged breach of contract relates to implied warranties, for breach of contract (Count IV). Because Paragraph 19(b)(5) does not reduce the

limitations period for Counts II and III or part of Count IV, the Court overrules defendant's motion as to those counts.[4]

## I.     Contract Interpretation

Under Kansas law, construction of a written contract is a matter of law for the Court. Wagnon v. Slawson Exploration Co., 255 Kan. 500, 511, 874 P.2d 659, 666 (1994).  "In construing a contract, the intent of the parties is the primary question; meaning should be ascertained by examining the documents from all corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; and reasonable rather than unreasonable interpretations are favored." Akandas, Inc. v. Klippel, 250 Kan. 458, Syl. ¶ 1, 827 P.2d 37, Syl. ¶ 1 (1992).  Where a contract is complete and unambiguous on its face, the Court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parol evidence. Simon v. Nat'l Farmers Org., Inc., 250 Kan. 676, 679-80, 829 P.2d 884, 887-88 (1992).

Whether an instrument is ambiguous is a question of law for the Court. Id.  A contract is ambiguous if it contains "provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." Id.  Contractual ambiguity appears only when "the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more possible meanings is the proper meaning." Marquis v. State Farm Fire & Cas. Co.,

---

[4]     The contract purports to waive any implied warranties, see Paragraph 19(B)(3) and (4), but defendant's present motion for summary judgment does not address that issue.  Likewise, defendant's motion does not address whether plaintiffs can maintain an independent claim for breach of contract.

- 7 -

265 Kan. 317, 324, 961 P.2d 1213 (1998).  A contract is not ambiguous merely because it does not address an issue. TMG Life Ins. Co. v. Ashner, 21 Kan. App.2d 234, 242, 898 P.2d 1145, 1154 (1995).

When a contract is not ambiguous, the Court may not rewrite a contract to achieve an equitable result under the guise of contract construction.  See Quenzer v. Quenzer, 225 Kan. 83, 85, 587 P.2d 880, 882 (1978); see also Patrons Mut. Ins. Ass'n v. Harmon, 240 Kan. 707, 713, 732 P.2d 741, 746 (1987). In addition, unless a contrary intent is demonstrated, contracting parties are presumed to have in mind all existing and applicable statutes and case law relating to the contract.  See Anderson v. Nat'l Carriers, Inc., 240 Kan. 101, 105, 727 P.2d 899, 903 (1986); Steele v. Latimer, 214 Kan. 329, 336, 521 P.2d 304, 310 (1974).  Accordingly, unless a contrary intent is shown, all existing applicable or relevant and valid statutes, ordinances and regulations, and settled law at the time the contract was made, become a part of the contract and must be read into it. Id.; Cairo Co-op. Exchange v. First Nat'l Bank of Cunningham, 228 Kan. 613, 619, 620 P.2d 805, 810 (1981); Heartland Premier, Ltd. v. Group B & B, L.L.C.. 29 Kan. App.2d 777, 780, 31 P.3d 978, 981 (2001).

The Kansas UCC provides that it shall be liberally construed and applied to promote its underlying purposes and policies.  K.S.A. § 84-1-102(1).  Those purposes and policies are: "(a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [and] (c) to make uniform the law among the various jurisdictions."  K.S.A. § 84-1-102(2).  As explained above, by the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it. K.S.A. § 84-2-725(1).  Here, Paragraph 19(b)(5) of the Aircraft Specification reduced the period of limitation to one year after the cause of action accrues.  Under the Kansas UCC, a cause of action for

breach of warranty accrues when a product is delivered unless the warranty "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." K.S.A. § 84-2-725(2).  Under Kansas law, however, the exception for warranties which extend to future performance is quite limited.  The Kansas Supreme Court has explained as follows:

> The exception provided in 84-2-725(2) . . . is written in the conjunctive. It requires that the warranty must explicitly extend to future performance and further that discovery of the breach must await the time of such performance.  * * *
>
> In Webster's Third New International Dictionary (Unabridged), the adverb 'explicitly' is defined as 'characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied.'  It is further stated 'the chief emphasis of the word EXPLICIT is on the notion of plain distinct expression that leaves no need for the reader or hearer to infer . . .' (p. 801.)

Voth v. Chrysler Motor Corp., 218 Kan. 644, 651, 545 P.2d 371, 377 (1976).  A typical warranty which requires that the seller repair or replace defective parts found during the period of the warranty does not warrant the product's future performance.  See id.; see also id. at 652, 545 P.2d at 378 (distinguishing warranty that product "will give satisfactory service at all times," which goes to future performance, and typical warranty to "make modifications, alterations or repairs to the component parts," which does not); Neb. Popcorn, Inc. v. Wing, 602 N.W.2d 18, 23-24 (Neb. 1999) (obligation to repair or replace defective parts does not warrant product's future performance); Crouch v. Gen. Elec. Co., 699 F. Supp. 585, 594 (S.D. Miss. 1988) (language that goods "will satisfactorily perform at all times," "will work properly for a lifetime," or "will give satisfactory service at all times" necessary to create warranty of future performance); 4B Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2-725:125 (3d ed. 2001) (ambiguity in warranty language should be interpreted against existence of future performance warranty) (collecting cases); 2 William D. Hawkland, Uniform Commercial Code Series

§ 2-725:2 (1998) (exception in Section 2-725(2) is narrow one; exception seems limited to situation where seller expressly gives warranty for period of time such as guaranteeing roof for 20 years); J. White & R. Summers, 1 Uniform Commercial Code § 11-9, at 608 (4th ed. 1995) (extension of normal warranty period does not occur in usual case, even though all warranties in a sense apply to future performance); id. at 607 (in contrast to usual interpretation of tort statute of limitations, Section 2-725 normally runs from date of delivery even though buyer does not know goods are defective).

To determine whether the parties intended an accrual date different from that stated in K.S.A. § 84-2-725(2), the Court examines Paragraph 19(a).  As previously noted, in Paragraph 19(a), Raytheon generally warranted that at the time of delivery, each aircraft part was free from defects in materials, workmanship and design, "provided, however, that [any] defect must be discovered and reported to Raytheon" within 60 months from the date of delivery.  Because the Paragraph 19(a) warranty only extended to defects "at the time of delivery," it was insufficient to create a warranty that "explicitly extends to future performance of the goods." K.S.A. § 84-2-725(2); see Voth, 218 Kan. at 651, 545 P.2d at 377 (obligation to repair or replace defective parts does not warrant product's future performance).[5] Accordingly, plaintiffs' cause of action for breach of express warranties and breach of contract (to the extent the alleged breach relies on express warranties) accrued at the time the aircraft was delivered.

Plaintiffs concede that under Paragraph 19(a), the date of delivery commenced the warranty. See

---

[5] Plaintiffs rely on rules of contract interpretation including the rule construing ambiguous language against the drafter of the contract.  K.S.A. § 84-2-725(2), however, effectively requires the Court to construe ambiguous warranty language against the individual attempting to change the statutory presumption that the accrual date is the date of delivery.  The statute does so by requiring that a warranty seeking to change the accrual date from the date of delivery must "explicitly" extend to future performance. K.S.A. § 84-2-725(2).  The Court cannot substitute general rules of contract interpretation to relieve plaintiffs of the consequences of the specific provisions in K.S.A. § 84-2-725 of the Kansas UCC.

Plaintiffs' Memorandum (Doc. #19) at 10. They argue, however, that Paragraph 19(b)(5) – which sets forth the one year period of limitations – does not run from the date of delivery. See id. at 12. Paragraph 19(b)(5) provides generally that a cause of action must be commenced within one year "after the cause of action accrues." Plaintiffs ignore the fact that where a contract for sale is silent on the subject of accrual, K.S.A. § 84-2-725(2) specifies that the cause of action accrues when tender of delivery is made. See Cairo, 228 Kan. at 619, 620 P.2d at 810 (absent expressed contrary intent, UCC provisions made express provisions of depositor's contract); Steele, 214 Kan. at 336, 521 P.2d at 310 (all applicable statutes and settled law at time contract is made become part of contract and must be read into it unless contrary intent shown); see also Sudenga Indus., Inc. v. Fulton Performance Prods., Inc., 894 F. Supp. 1235, 1238-39 (N.D. Iowa 1995) (courts will not infer terms of continuous performance which are not clearly and expressly stated; ambiguity must be interpreted against existence of such warranty); Roy v. Armco, Union Wire Rope Div., 636 F. Supp. 839, 840 (E.D. Tex. 1986) (same), aff'd, 818 F.2d 863 (1987). Because the parties did not set forth a separate date for accrual of a cause of action, the Court must follow K.S.A. § 84-2-725(2). Under that provision, the contractual one-year statute of limitations bars plaintiffs' claims for breach of warranty. See Sudenga, 894 F. Supp. at 1238-39 (where parties' contract reduced statute of limitations to one year, refusing to infer different accrual date).

Relying on Paragraph 19(a), plaintiffs argue that the parties intended "to reduce the limitations period to one year after the Plaintiffs discovered and reported defects in the aircraft to Raytheon, provided defects associated with Raytheon-manufactured parts were discovered and reported within five years after the date of delivery of the aircraft and defects associated with other parts were reported within two years after delivery. Stated another way, Plaintiffs had either five years or two years to discover and report

defects to Raytheon, and one year after that in which to bring an action for such defects." <u>Plaintiffs' Memorandum</u> (Doc. #19) at 4. Under plaintiffs' interpretation, plaintiffs had up to six years after delivery to bring a cause of action for defects associated with Raytheon-manufactured parts, <u>i.e.</u> five years to discover and report the defect and one year thereafter to file suit. Such an interpretation is inconsistent with K.S.A. § 84-2-725(1), which provides that an action for breach of a contract of sale must be commenced within four years after the date of delivery.[6] In addition, plaintiffs' interpretation would change the accrual date in K.S.A. § 84-2-725(2) from the date of delivery to the date that plaintiffs reported a defect, even though the warranty does not explicitly extend to future performance.[7]

Plaintiffs maintain that to interpret the accrual date in Paragraph 19(b) to mean the date of delivery creates an absurd result because under such an interpretation, they could only file suit for breach of warranty during the first year of the five year warranty in Paragraph 19(a). The Court agrees that using the date of delivery as the accrual date does not completely reconcile Paragraphs 19(a) and 19(b), but

---

[6] In <u>Ministic Air Ltd. v. Raytheon Aircraft Co.</u>, No. 99-1493-JTM (D. Kan.), which involved a warranty provision identical to Paragraph 19(b)(5), defendant argued that the cause of action accrued on the date of the airplane accident. <u>See</u> <u>Memorandum In Support Of Defendant Raytheon Aircraft Company's Motion To Dismiss</u> filed December 21, 2000 in Case No. 99-1493-JTM at 8, attached to <u>Plaintiffs' Memorandum In Opposition To Raytheon's Motion For Partial Summary Judgment</u> (Doc. #19) filed August 15, 2005 in Case No. 05-2134. In <u>Ministic</u>, the distinction between the date of product delivery and the date of injury was not critical; using either date as the accrual date, plaintiff's cause of action was barred. <u>See id.</u> Defendant could have explained that for purposes of the motion it was assuming that the accrual date was the date of the airplane accident, but it did not do so. Nevertheless, the Court is not bound by defendant's statement in <u>Ministic</u>.

[7] Because the parties had reduced the statute of limitations from four years to one year, they could have also agreed to change the accrual date from the date of delivery to the date when the breach of warranty was or should have been discovered. To do so, the contract would have had to (1) set forth a warranty which explicitly extended to future performance and required that discovery of the breach await the time of such performance; or (2) set forth a separate accrual definition which modified the statutory presumption of the accrual date under K.S.A. § 84-2-725(2).

plaintiffs' proposal – that the cause of action accrues when they report a defect to defendant – is even more troublesome. First, plaintiffs' interpretation of the Paragraph 19(b) accrual date suffers from the same flaw that allegedly exists in defendant's interpretation, i.e. the warranty period set forth in Paragraph 19(a) is not identical to the period in which plaintiffs may file suit to enforce that provision under Paragraph 19(b). Under plaintiffs' interpretation, plaintiffs could only file suit for breach of warranty during the first four years (the statutory limit), but Paragraph 19(a) would purport to give them five years to discover and report the defect and one year thereafter to file suit. Second, plaintiffs' interpretation relies on the assumption that in Paragraph 19(b), the parties intended to change the accrual date set forth in K.S.A. § 84-2-725(2). K.S.A. § 84-2-725(2) provides that the date of delivery is the accrual date unless "the warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." Nothing in Paragraph 19(a) or 19(b) suggests that the parties intended that the warranty extend to future performance and certainly such an intention is not explicit. In sum, plaintiffs' proposed interpretation is inconsistent with the four-year statutory limit set forth in K.S.A. § 84-2-725(1) and the accrual date set forth in K.S.A. § 84-2-725(2).

## II. Contract As Unconscionable

Plaintiffs contend that using the delivery date as the accrual date makes the contract unconscionable. Under K.S.A. § 84-2-302, the Court may refuse to enforce a contract or a portion of a contract if it determines that the contract or any clause of the contract was unconscionable at the time it was made.

In Wille v. Southwestern Bell Tel. Co., 219 Kan. 755, 549 P.2d 903 (1976), the Kansas Supreme Court identified the following factors to aid in determination of unconscionability:

> (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position [citation omitted];
>
> (2) a significant cost-price disparity or excessive price;
>
> (3) a denial of basic rights and remedies to a buyer of consumer goods [citation omitted];
>
> (4) the inclusion of penalty clauses;
>
> (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect [citation omitted];
>
> (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract [citation omitted];
>
> (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them;
>
> (8) an overall imbalance in the obligations and rights imposed by the bargain;
>
> (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate [citation omitted]; and
>
> (10) inequality of bargaining or economic power.

Id. at 758-59, 549 P.2d at 906-07. Furthermore, additional factors such as deceptive bargaining conduct and unequal bargaining power are necessary to render the contract unconscionable. Id. at 759, 549 P.2d at 907.

Plaintiffs concede that the contract was not unconscionable because of any disparity in bargaining power, but they maintain that under defendant's interpretation of the accrual date, the contract was "unconscionable *per se* at the time it was made." Plaintiffs' Memorandum (Doc. #19) at 14. Plaintiffs do not define what they mean by "unconscionable *per se*." Comment 2 to K.S.A. § 84-2-302 notes that the Wille factors can be divided between what some courts call procedural unconscionability (unfairness in the

bargaining process) and substantive unconscionability (unfairness in the terms of the contract). In this context, plaintiffs apparently rely solely on substantive unconscionability.

Plaintiffs argue that the contract which defendant drafted is unconscionable because it phrases clauses in language "that is incomprehensible to a layman or that divert[ed] his attention from the problems raised by them or the rights given up through them" and the contract created "an overall imbalance in the obligations and rights imposed by the bargain." The Court finds, however, that the contract was not unconscionable when made. First, courts generally require both procedural and substantive unfairness before finding a contract unconscionable. K.S.A. § 84-2-302, Comment 2. At most, plaintiffs have shown that the contract is unbalanced in certain respects. The record, however, does not reflect over-reaching, deception or unequal bargaining power – the hallmarks of an unconscionable contract. See State ex rel. Stovall v. DVM Enters., Inc., 275 Kan. 243, 251, 62 P.3d 653, 658 (2003) (must be some element of deceptive bargaining conduct and unequal bargaining power to render contract unconscionable); Willman v. Ewen, 230 Kan. 262, 266, 634 P.2d 1061, 1064 (1981) (same). Plaintiffs and defendant appear to be sophisticated business entities and plaintiffs do not appear to be in a substantially weaker economic position than defendant. See Transamerica Oil Corp. v. Lynes, Inc., 723 F.2d 758, 764 (10th Cir. 1983). Second, since K.S.A. § 84-2-725(1) expressly permits the parties to reduce the limitations period to one year, a one-year period of limitations is reasonable as a matter of law. See generally Schweizer v. DEKALB Swine Breeders, Inc., 954 F. Supp. 1495, 1507 (D. Kan. 1997) (contractual limitation period of one year not unenforceable adhesion contract). The fact that the limitations period accrues upon the delivery date is also reasonable as a matter of law because K.S.A. § 84-2-725(2) expressly establishes such an accrual date. See id. (clause excluding seller's liability for consequential commercial damages not

unconscionable on face because it serves commercially reasonable purpose of allocating unknown or undeterminable risks).

In effect, plaintiffs argue that the contract is unconscionable because Raytheon inserted a five year warranty provision even though plaintiffs could only file suit to enforce that provision for the first year after delivery of the airplane. The Court agrees that after the first year, the express contractual warranty has no teeth. Raytheon is free to warrant products beyond one year, however, even though a party cannot maintain a legal action for breach of that extended warranty. The contract is not unconscionable simply because Raytheon failed to advise plaintiffs that under Kansas law, any cause of action for breach of express warranty accrued at the time of delivery. The Court therefore sustains defendant's motion for summary judgment on Count I and that part of Count IV which proceeds under an express warranty theory.

**IT IS THEREFORE ORDERED** that Raytheon's Motion For Partial Summary Judgment (Doc. #5) filed June 15, 2005 be and hereby is **SUSTAINED in part**. The Court grants summary judgment in favor of defendant on Count I (express warranties) and part of Count IV (breach of contractual express warranties). Defendant's motion is otherwise overruled. Counts II (breach of implied warranty), III (breach of implied warranty), IV (breach of implied contractual warranties), V (negligence) and VI (strict liability) remain for trial on **January 16, 2007**.

Dated this 8th day of March, 2006 at Kansas City, Kansas.

                                       s/ Kathryn H. Vratil
                                       KATHRYN H. VRATIL
                                       United States District Judge